812 F.2d 1406
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joel BARNETT, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-3111.
 United States Court of Appeals, Sixth Circuit.
 Jan. 13, 1987.
 
 Before ENGEL and JONES, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Barnett appeals the district court's affirmance of the Secretary's denial of disability benefits under 42 U.S.C. Secs. 416(i) and 423(a) (1982). For reasons set forth more fully below, we affirm the judgment of the district court.
 
 
 2
 The procedural history of this case is as follows. Claimant filed an application for benefits on June 9, 1981, claiming that he became disabled on June 6, 1981. The Social Security Administration (SSA) denied the claim initially and on reconsideration. A de novo hearing was held before an Administrative Law Judge (ALJ) on January 4, 1983. The ALJ's decision of February 1, 1983, held that claimant was not disabled from all gainful activity because he retained the ability to perform the full range of sedentary work. The Appeals Council refused to review this decision and it became the final decision of the Secretary. The district court affirmed and the claimant appealed to this court.
 
 
 3
 At the time of the hearing before the ALJ, claimant was 47 years old and had a high school education. His relevant work experience was 18 years as a machine operator, characterized as unskilled with medium exertional requirements. His "insured status" under the Act expired on June 30, 1982.
 
 
 4
 Claimant had a number of work-related injuries over the years, the most significant being the March 1972 fracture of his right leg, resulting in traumatic arthritis in his right ankle. That injury also caused lower lumbar strain. In 1981, claimant injured his right elbow (he is right-handed). Examinations since that time have resulted in conflicting medical opinions about the continued severity of his right elbow injury.
 
 
 5
 Dr. Schear, claimant's treating physician, examined claimant on November 20, 1981, April 30, 1982, and June 28, 1982. With respect to the right elbow, Dr. Schear initially observed full range of motion with "tenderness to palpation over the epicondyle and increased pain with resisted pronation and extension at the wrist." X-rays were normal. Dr. Schear noted that claimant was receiving therapy for this injury but was responding slowly. He concluded that claimant was "temporarily and totally disabled" as of November 20, 1981. In June of 1982, however, Dr. Schear found no impairment in the ability to grasp or manipulate with either hand but noted chronic right elbow pain.
 
 
 6
 Claimant was examined for the Industrial Commission of Ohio on May 12 and September 30, 1982, by Dr. Hamilton. Dr. Hamilton also noted marked tenderness over the right epicondyle. Flexion of the right elbow was limited in the last 20? as was active rotation of the right hand and wrist. In May 1982, Dr. Hamilton opined that claimant would be unable to perform his past work for at least six months due to his elbow. In November of that year, he made similar findings and also noted considerable weakness in the right hand grip. Disability was recommended for another six months.
 
 
 7
 At the request of the SSA, claimant was examined by Dr. Heath on August 21, 1982. Relative to the right elbow injury only, Dr. Heath found full range of motion, no reflex abnormalities, sensory deficits, muscle weakness or atrophy, and an equal ability to grasp and manipulate objects with both hands. His diagnosis was "lateral epicondylitis of the right elbow."
 
 
 8
 The ALJ reviewed this evidence and found that claimant's right ankle injury constituted a severe exertional impairment. The "numerous other impairments" complained of, including the epicondylitis of the right elbow, were not considered to be severe. It was determined that claimant's severe exertional impairments precluded him from returning to his previous work but that he retained the residual functional capacity to perform a full range of sedentary work. Accordingly, considering all the evidence and the absence of any severe nonexertional impairments, the ALJ noted that Rule 201.21 of 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1 (1986), directed the conclusion that claimant was not disabled.
 
 
 9
 On March 7, 1983, five weeks after the ALJ's decision, claimant was evaluated by Dr. Wilson, a clinical psychologist. Dr. Wilson noted that claimant was suffering from "major depression" and borderline intellectual functioning. In fact, his full scale IQ was determined to be 74, denoting borderline mental retardation. Dr. Wilson indicated that this depression was (and presumably had been) increasing in severity since June 1981 when claimant last worked and was adversely affecting all aspects of his life. The doctor considered the IQ test results "to be an accurate measure of his current level of intellectual functioning, which probably reflects some decrease in capacity due to his significantly impaired psychological status." Dr. Wilson concluded that claimant's psychological well-being was bad and getting worse and that, at the time of the examination, he was totally disabled from any work. This report was submitted to the Appeals Council along with the request to review the ALJ's decision. The Council did not consider the new evidence persuasive, presumably because it did not relate to the relevant period of insurance coverage ending in June 1982.
 
 
 10
 Appellate review of the Secretary's decision to deny disability benefits is limited to determining whether substantial evidence in the record taken as a whole supports the Secretary's findings. 42 U.S.C. Sec. 405(g) (1982). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951).
 
 
 11
 Claimant concedes that if his right leg impairments were the only serious impairments at the time his insured status expired on June 30, 1982, then the ALJ's reliance on the grid for a finding of no disability would be "unquestionably correct." However, the claimant contends that the record establishes that he suffered from three nonexertional impairments at that time: (1) epicondylitis of the right elbow, (2) major depression, and (3) borderline mental retardation. If any of these nonexertional impairments were present at or before June 30, 1982, then reliance on the grid would have been inappropriate and the Secretary would have had the burden to come forward with evidence that there would be jobs in the economy that claimant could perform. See Wages v. Secretary of HHS, 755 F.2d 495, 498-99 (6th Cir.1985) (per curiam). Although a vocational expert was present at the hearing, the ALJ did not have him testify.
 
 
 12
 With respect to the epicondylitis of the right elbow, there was conflicting medical evidence on its severity and the degree to which it affected claimant's ability to grasp and manipulate objects. Drs. Schear and Heath both found no impairment in the right hand's ability to grasp and manipulate, no atrophy of the right arm, and normal or near normal range of motion. Only Dr. Hamilton noted weakness in the grip of the right hand. It is the ALJ's function to weigh conflicting evidence and make credibility determinations. The ALJ considered this medical evidence along with claimant's subjective complaints of pain and concluded that his epicondylitis was a treatable condition that would not prevent him from performing a significant number of sedentary jobs. He therefore concluded that it did not constitute a severe nonexertional impairment. We find that there is substantial evidence to support this particular conclusion.
 
 
 13
 The late-coming examination and report on claimant's psychological and intellectual functioning presents a more difficult issue. This report was submitted after the ALJ's decision but nonetheless was incorporated into the record by the Appeals Council. The problem is that while Dr. Wilson's diagnosis and prognosis paints a picture of a man that is most certainly disabled from any and all work under any definition, that diagnosis was based on claimant's condition on the date of the examination--March 7, 1983. The crucial date in this case is the date claimant's insured status expired--June 30, 1982.
 
 
 14
 The Appeals Council considered the report of insufficient evidentiary value to justify reconsidering the ALJ's decision. Of course, evidence of post-insured status mental impairment is not necessarily irrelevant to the issue of claimant's mental health on a prior date. To the extent that such evidence relates back to the period of insurance coverage, it should be considered by the Secretary. Johnson v. Secretary of HHS, 679 F.2d 605, 607 (6th Cir.1982). In the instant case, however, Dr. Wilson's evaluation came almost nine months after the expiration of claimant's insured status. Further, the report specifically stated that claimant's condition had been progressively deteriorating since he last worked in June 1981. Since it does not appear to be reasonably ascertainable from the record, including Dr. Wilson's report, precisely when claimant's psychological and intellectual impairment became severe, the Appeals Council was justified in affirming the ALJ's decision after receipt of the new evidence.
 
 
 15
 In accordance with the foregoing discussion, the judgment of the district court is AFFIRMED.