791 F.2d 933
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ELLEN R. JOHNSTON, Plaintiff-Appellant,
vs.
MARGARET A. HECKLER, SECRETARY OF HEALTH AND HUMAN SERVICES,
Defendant-Appellee.
 85-1391
 United States Court of Appeals, Sixth Circuit.
 4/4/86
 
 AFFIRMED
 E.D.Mich.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 Before: LIVELY, Chief Judge; CONTIE, Circuit Judge; and WEICK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Ellen R. Johnston appeals from the judgment of the district court affirming the Secretary's denial of widow's benefits. For the reasons that follow, we affirm.
 
 I.
 
 2
 Johnston filed a claim for widow's benefits on September 8, 1982, alleging that she was disabled by degenerative arthritis of the spine, hips, knees and costal chondritis. Johnston initially alleged that her condition became disabling on May 9, 1981, but later amended the onset date to December 2, 1978. She premised her claim to widow's benefits on Marvin Johnston, a deceased wage earner and her first husband.
 
 
 3
 Johnston's claim was denied initially on October 27, 1982 on the basis that her condition was not disabling on or before March 31, 1981, the date the Social Security Administration determined Johnston's seven-year period of eligibility expired. Johnston requested reconsideration, challenging both the computation of the eligibility period and the determination of eligibility. Johnston's claim was denied upon reconsideration on February 24, 1983. Subsequently, Johnston requested and was granted a hearing before an Administrative Law Judge (ALJ).
 
 
 4
 The hearing was held on December 15, 1983. Johnston was 60 years old at that time and unmarried. With regard to education, Johnston received a G.E.D. in 1970. She also successfully completed a licensed practical nurse (L.P.N.) program in May, 1981 and subsequently received her state license. Johnston worked as an L.P.N. in a geriatric village from May to July of 1981 and in a nursing home for approximately five weeks in 1982. Her previous work experience includes owning a bait shop from 1968 to 1969, selling real estate from 1970 to 1975, and owning a party store, gasoline and bait shop enterprise from 1976 to 1978.
 
 
 5
 Johnston testified at the ALJ hearing concerning her ailments. She stated that she experienced pain in her lower back from below her beltline down the outer portion of her legs to her ankles. This back pain was more severe than other pain experienced in her neck, right shoulder and right arm to her elbow. Johnston testified that she takes aspirin to combat this pain but does not take her prescribed medications due to side effects. Johnston stated that her two doctors told her she could not engage in any work because of her condition. Johnston also testified that she could walk for a couple of blocks, stand for approximately half an hour to one hour and sit for fifteen to twenty minutes. Johnson does her own cooking, dishes, shopping and some cleaning. Her daughter-in-law does her laundry and vacuuming.
 
 
 6
 The following pertinent medical evidence was introduced at the hearing. A September 26, 1976 x-ray of Johnston's lumbosacral spine revealed a 'minimal to moderate amount of degenerative changes' but otherwise the x-ray indicated a normal spine. Subsequent examinations and x-rays indicated minimal degenerative changes in the lumbosacral spine. However, in a letter dated August 30, 1983, Dr. Braunstein, Director of Skeletal Radiology at the University of Michigan Medical School, reached the following conclusions based on review of x-rays taken on August 20, 1977, March 20, 1980 and February 8, 1981:
 
 
 7
 [T]here is severe degenerative arthritis of the lumbosacral spine and moderate degenerative arthritis of the cervical spine. These changes are chronic, and began many years before the radiographs of 2/8/81.
 
 
 8
 Other relevant medical evidence produced at the hearing included an October 19, 1982 report by Dr. E. Peszko who had last seen Johnston on September 3, 1982. Dr. Peszko diagnosed 'possible degenerative arthritis in the lumbar spine.' Dr. Peszko also noted pain in the thoracic spinal region. However, Dr. Peszko also indicated that Johnston had full range of forward flexion, and that the thoracic spine had guarded but full range of motion. Lastly, Dr. Peszko found Johnston's sensory and motor functions were satisfactory.
 
 
 9
 Dr. Hira Branch, an orthopedic surgeon, testified as a medical expert based on his review of Johnston's file and his observations made at the hearing. Dr. Branch opined that a degenerative arthritis condition existed prior to March, 1981, but that Johnston did not meet the criteria contained in the Listed Impairments either prior to March, 1981 or at the time of the hearing. Dr. Branch did state, however, that a current orthopedic examination and neurologic examination could be helpful in evaluating Johnston's pre-March, 1981 condition by providing clinical evidence of radicular distribution of significant motor loss with muscle weakness, sensory loss and reflex loss. Dr. Branch also stated that the x-rays indicated that Johnston's arthritis had progressively worsened.
 
 
 10
 In light of Dr. Branch's testimony, the ALJ ordered an orthopedic back examination. Dr. Isabel Ponze examined Johnston on January 3, 1984. Dr. Ponze's impressions were osteoarthritis, degenerative disc disease involving the cervical and lumbar spine and cervical spondylosis, but Dr. Ponze found no evidence of radiculopathy.
 
 
 11
 On February 16, 1984, the ALJ issued his decision, finding that Johnston was not entitled to widow's benefits. The ALJ fully examined the medical evidence presented in reaching his decision. The ALJ placed significance on Dr. Branch's testimony and the report of Dr. Ponze. Based on Dr. Ponze's report, the ALJ found that Johnston had not established all of the requirements of the pertinent Listed Impairment, Sec. 1.05(C), 20 C.F.R. Part 404, Appendix I. The ALJ stated:
 
 
 12
 while claimant may have pain and significant limitation of motion in the spine as required in Subsection 1 of 1.05C she does not have the muscle spasm required in that subsection. Neither does she have any of the findings required in Subsection C2 of Listing 1.05, that is, sensory loss, reflex loss, and appropriate radicular distribution of significant motor loss with muscle weakness.
 
 
 13
 The ALJ also relied on the report of Dr. Peszko, Johnston's treating physician. In particular, the ALJ noted the findings that there was full, albeit guarded, forward flexion and 'that the pain in the lumbosacral spine and thoracic area was in a 'negative' radicular distribution, meaning it was not in an appropriate radicular distribution along any particular dermatome or nerve root pattern.' (original emphasis).
 
 
 14
 On March 3, 1984, Johnston requested review before the Appeals Council. The Appeals Council denied her request on April 6, 1984, thereby allowing the ALJ's decision to become the final decision of the Secretary.
 
 
 15
 On June 1, 1984, Johnston filed her complaint with the district court, appealing the Secretary's decision. Johnston brought to the court's attention three medical exhibits which were not, but should have been, considered by the ALJ and the Appeals Council. Apparently, these exhibits previously had been part of the record but they were not offered at the hearing because they had been obtained by the Michigan Disability Determination Service (DDS) on behalf of the Social Security Administration. The DDS furnished the exhibits upon Johnston's request.
 
 
 16
 One of the exhibits was a report by Dr. Kevin Brown dated May 27, 1983. Dr. Brown concluded that Johnsston suffered from severe degenerative arthritis of the lumbar area but specifically stated there was 'no evidence to suggest a radiculopathy at this time.' Dr. Brown found that motion of the spine was limited, with a forward flexion of 45~ and rotation of 10~ to the left and right. Dr. Brown also observed 'some palpable spasm in the lower lumbar areas.' Examination of upper and lower extremities revealed no muscle weakness, no motor loss and no sensory loss.
 
 
 17
 A second exhibit was another report by Dr. Peszko, dated May 6, 1983. This report is consistent with Dr. Peszko's report of October 19, 1982, in that Dr. Peszko makes a diagnosis of lumbar degenerative disc disease, but also finds full forward flexion and satisfactory sensory and motor functions.
 
 
 18
 The third exhibit is an x-ray report dated May 21, 1981. The report concludes there is a degenerative change in the lower lumbosacral spine.
 
 
 19
 The case was referred to a magistrate who, on March 15, 1985, filed a report and recommendation. The magistrate believed there was substantial evidence to support the Secretary's determination that Johnston is not disabled, and accordingly recommended affirmance of the findings of the Secretary. The magistrate specifically considered the three exhibits previously excluded from the record. The magistrate concluded that the exhibits weakened, rather than strengthened, Johnston's case. The magistrate therefore rejected Johnston's claim that the exhibits required reversal of the ALJ's findings.
 
 
 20
 On May 7, 1985, the district court adopted the magistrate's report and recommendation and granted judgment in favor of the Secretary. This timely appeal followed.
 
 II.
 
 21
 Our review of the Secretary's decision is limited to determining whether substantial evidence supports the Secretary's decision. Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Pursuant to 42 U.S.C. Sec. 405(g), the Secretary's factual findings are conclusive if supported by substantial evidence.
 
 
 22
 Johnson argues that she was denied a full and fair hearing before the ALJ. She contends that the omission of the three medical exhibits from the record and the manner in which Dr. Ponze's report was considered necessitate a remand of this case. In particular, Johnston claims that the ALJ's reliance on Dr. Branch's testimony is misplaced because Dr. Branch did not have the benefit of the three medical exhibits nor Dr. Ponze's report.
 
 
 23
 Johnston's argument regarding Dr. Ponze's report is without merit. It was impossible for Dr. Branch to consider Dr. Ponze's report since the ALJ requested the additional examination and report as a result of Dr. Branch's testimony. Dr. Branch testified that without the objective orthopedic or neurological findings set forth in the Listed Impairments, it could not be concluded that Johnston was disabled under the Listings. Dr. Branch further testified that a current examination, if it indicated significant limitation of motion and sensory, motor or reflex loss, would be helpful in evaluating Johnston's condition as of March 1981. Based on this testimony, the ALJ ordered an orthopedic back examination, upon which Dr. Ponze's report was based. The ALJ fully considered Dr. Ponze's report in the manner discussed by Dr. Branch and correctly found that it did not support a finding of disability. In ordering and considering Dr. Ponze's report, the ALJ satisfied his burden of developing an accurate and complete record. See Thorton v. Schweiker, 663 F.2d 1312, 1316 (5th Cir. 1981). This was to the benefit, not the detriment, of Johnston and cannot be the basis of a claim of error on appeal.
 
 
 24
 We next consider Johnston's claim regarding the three medical exhibits. The Secretary concedes that these exhibits were not part of the record at the time of the hearing, and therefore were not reviewed by the ALJ or the medical expert. The Secretary alleges, however, that the Appeals Council considered two of the three omitted exhibits when it reviewed the ALJ's denial of benefits. This allegation is not readily ascertainable from the record. First, not Appeals Council's denial of Johnston's request for review does not make any reference to the omitted exhibits. Second, Johnston initially discovered their absence subsequent to the Appeals Council's decision denying review and therefore had not placed any special emphasis concerning their omission in her request for review. Consequently, we conclude that these three exhibits were fully analyzed and addressed only by the district court in its affirmance of the Secretary's denial of benefits.
 
 
 25
 In his report and recommendation, the magistrate specifically addressed Johnston's arguments concerning the three medical exhibits. The magistrate found that the exhibits 'serve[d] to weaken rather than strengthen Plaintiff's case.' The magistrate specifically referred to the reports of Dr. Peszko and Dr. Brown, but did not mention the May, 1981 x-ray.
 
 
 26
 Johnston claims it was error for the magistrate, and consequently the district court, to consider the exhibits. Johnston correctly observes that in an appeal from a determination by the Secretary, the court is not to try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Myers v. Richardson, 471 F.2d 1265, 1266-67 (6th Cir. 1972), quoting Floyd v. Finch, 441 F.2d 73, 75 (6th Cir. 1971). Johnston asserts that the examination of the exhibits by the magistrate was impermissible de novo review, and concludes that only by remand to the Secretary can her rights to administrative due process be satisfied.
 
 
 27
 We disagree. As emphasized by the ALJ, the crucial determination in Johnston's case is whether her condition meets the criteria of Sec. 1.05(C) of the Listed Impairments, 20 C.F.R. Part 404, Appendix I. Section 1.05(C) provides:
 
 
 28
 C. Other vertebrogenic disorders (e.g. herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
 
 
 29
 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
 
 
 30
 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.
 
 
 31
 Thus, in order to be considered disabled under this regulation a claimant must establish both '[p]ain, muscle spasm, and significant limitation of motion in the spine' and 'radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.'
 
 
 32
 This Circuit has strictly construed the Secretary's requirement to provide objective medical evidence for each and every element in order to show disability. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). The ALJ correctly observed that the evidence submitted at that time, including Dr. Ponze's report, failed to establish the impairments contained in either subsection (1) or (2) of Sec. 1.05(C). Only if there is a possibility that the ALJ could conclude, based on the three additional medical exhibits, that Johnston established the two elements of Sec. 1.05(C) would remand be appropriate. We find that there is not such a possibility.
 
 
 33
 The three medical exhibits are mostly consistent with the evidence considered by the ALJ. Dr. Peszko's report, Dr. Brown's report, and the May, 1981 x-ray all indicate degenerative arthritis in the lumbar region. However, this same conclusion was reached by Dr. Branch and Dr. Ponze, and the ALJ expressly found that the medical evidence established the existence of arthritis as of March, 1981. Dr. Brown's report further indicated limitation of movement in Johnston's spine, including a forward flexion of 45~.[1] Dr. Ponze, though, had also found limited spinal movement, indicating a forward flexion of only 30~.
 
 
 34
 The only impairment diagnosed in the additional medical exhibits which was not diagnosed previously is Dr. Brown's diagnosis of 'some palpable spasm in the lower lumbar areas.' With this diagnosis, Johnston would meet all the elements of Sec. 1.05(C)(1). However, she still fails to satisfy the criteria of Sec. 1.05(C)(2). Dr. Brown expressly noted there was 'no evidence of findings to suggest a radiculopathy' and also found no muscle weakness, no sensory loss and no motor loss. Dr. Pesko likewise indicated, as he had in his previous report, that Johnston's sensory and motor functions were satisfactory. Thus, there is no medical evidence which would support a determination on remand that Johnston has established the elements of Sec. 1.05(C). Consequently, we conclude that remand would be fruitless.
 
 
 35
 As a final observation, we note that support for the district court's actions in reviewing the three medical exhibits without remanding the entire case is found in Thornton v. Schweiker, 663 F.2d 1312 (5th Cir. 1981). In that case, the Fifth Circuit remanded to the district court after determining that certain requested evidence had failed to appear in the record. The claimant had not raised the objection concerning the omitted evidence before the district court. In remanding, the Fifth Circuit instructed the district court to make a 'determination whether the evidence that the claimant sought to acquire and introduce at her administrative hearing warrants a remand to the Secretary.' Id. at 1316.
 
 
 36
 In conclusion, we find that the district court acted properly in considering the additional evidence and in finding that remand is unnecessary. Accordingly, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 Dr. Peszko indicated, as he had his previous report, full forward flexion