815 F.2d 79
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Susan E. RANDOLPH, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-1042.
 United States Court of Appeals, Sixth Circuit.
 Feb. 24, 1987.
 
 Before KEITH, KRUPANSKY, and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Randolph seeks review of the district court's determination that substantial evidence supports the Secretary's conclusion that she is not disabled. Our review of the record and the arguments advanced by plaintiff results in our reaching the conclusion that the Secretary's determination is supported by substantial evidence and we affirm.
 
 
 2
 This is essentially a pain and credibility case. Since these are familiar issues, we start with the well established premises that pain alone can be disabling if the result of a medical impairment, Kirk v. Secretary of Health and Human Services, 667 F.2d, 524, 538 (6th Cir.1981), cert. denied, 103 S.Ct. 2428 (1983), and that findings with regard to credibility rest solely with the Secretary and "should not be discarded lightly." Beavers v. Secretary, 577 F.2d, 383, 387 (6th Cir.1978). It is the resolution of the tension that exists between these frequently cited principles that is the principal task in this case.
 
 
 3
 Plaintiff is a forty-five year old married woman who has completed two years of college and is a registered nurse. In addition to working as a registered nurse, her relevant work history includes being a sales representative for an orthopedic equipment company, a service director for a health care institution, an owner and manager of a boutique, and a nursing instructor for three employers.
 
 
 4
 In March of 1983, plaintiff was admitted to Harper Hospital with a swelling of the left breast and chills and fever. Physical examination, tests, and laboratory analysis were essentially unremarkable except for a bone marrow asperation which revealed non-caseating granulomas (tumors) consistent with sarcoidosis.[1] No limitations as to her activities were noted.
 
 
 5
 In June of 1983, plaintiff was readmitted to Harper Hospital with similar complaints. Her test results were once again unremarkable and her discharge diagnosis did not reveal anything not previously known other than the likely involvement of the sarcoidosis with several joints including the left thumb and right hip. Her treating physician, Dr. Haas, indicated her condition upon discharge was fairly good as well as her ultimate prognosis. Her diet and activities were "as tolerated." On November 18, 1983, plaintiff filed for disability insurance benefits.
 
 
 6
 There can be no dispute that prior to filing for benefits there is nothing in plaintiff's medical records or work history that would entitle her to disability benefits with an onset date of March of 1983. Subsequent to filing, the medical evidence that was generated consisted of reports from Dr. Haas, a report following an examination by Dr. Macko (December, 1983), a consultive exam by Dr. Puri (May, 1984), a report from Drs. Urdineta and Hunninghake of the University of Iowa Hospital's Pulmonary Clinic (July, 1984), a September 1984 report from Dr. Baker, an associate of Dr. Haas, and testimony from Dr. Lewis, a board certified internist, who testified as a medical advisor at the hearing. Plaintiff also testified as to severe debilitating joint pain.
 
 
 7
 When all of these reports are analyzed together, along with the very extensive 1982 reports from Mayo Clinic, a rather clear picture emerges. With the exception of Dr. Haas, no medical report or clinical finding supports disability, nor do they individually or collectively support plaintiff's subjective testimony at the hearing. In connection with Dr. Haas' reports, several observations are pertinent. First, it was not until after plaintiff filed for disability that his reports indicate any type of disability as a result of her medical problems. As to her medical problems--it was Dr. Haas who referred her to Mayo Clinic because he could find no satisfactory medical explanation for her problems. Significantly, neither could the many doctors and departments of Mayo who examined her. Even Dr. Baker, who was an associate of Dr. Haas and the Deputy Director of the Comprehensive Cancer Center for Metropolitan Detroit, says nothing about disability in a report sent to plaintiff's attorney in September of 1984, one week prior to the hearing before the Administrative Law Judge (ALJ). The best Dr. Baker can do is refer plaintiff's counsel back to the comprehensive Mayo Clinic reports which essentially gave plaintiff a clean bill of health.
 
 
 8
 There is no doubt that a certain deference should be paid to a treating physician but in this case Dr. Haas, the treating physician, was the person who referred the plaintiff to the Mayo Clinic. Dr. Haas also referred her two years later to the specialists at the University of Iowa who were also unable to find anything which would form the basis of clinical support for plaintiff's complaints.
 
 
 9
 With the state of the medical records and testimony being what it was, the ALJ was well within the bounds of permissible discretion in refusing to credit plaintiff's subjective version of her condition. The substantial medical evidence of record supports his conclusion.
 
 
 10
 Plaintiff also makes the argument on appeal that the ALJ erred in using the grids to find plaintiff was not disabled was erroneous. Little time need be spent on this argument because it is predicated on a case which is clearly distinguishable. In Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir.1985), the ALJ, relying solely on the grids, found a claimant who could not sit or stand for long intervals capable of performing sedentary work. The court in Wages found that the evidence supported the plaintiff's claim that she could not sit or stand for long periods and that there was no substantial evidence to the contrary. This is distinguishable from this case where the ALJ did not solely rely on the grids but had a vocational expert testify. The grids are only intended to eliminate the need for a vocational expert where a claimant's impairments are exertionally limiting and the claimant can perform the full range of activities in the physical exertion category. Kirk, 667 F.2d at 537. Here the ALJ considered the plaintiff's non-exertional limitations and also addressed the transferability of skills independent of the grid. It is true that for the vocational expert to reach the conclusion that there were jobs that plaintiff could perform, he had to credit the hypothetical posed by the ALJ which differed from plaintiff's version of her own limitations. Since we have already indicated the ALJ was justified in his credibility determinations, however, it follows that he posed an appropriate hypothetical. Finding no errors in procedure and finding substantial evidence to support the Secretary, we AFFIRM.
 
 
 
 [1]
 Sarcoidosis is defined as a chronic, progressive generalized granulomatous reticulosis of unknown etiology involving almost any organ or tissue. Dorland's Illustrated Medical Dictionary, (25th ed. 1974)