815 F.2d 701
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William R. ALSEPT, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-5690.
 United States Court of Appeals, Sixth Circuit.
 March 3, 1987.
 
 Before ENGEL and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant William R. Alsept appeals from a district court order upholding the Secretary's determination that he is not disabled and therefore is not entitled to either disability insurance benefits or Supplemental Security Income (SSI) benefits. Alsept argues that the Secretary's decision that he can perform a full range of light work is not supported by substantial evidence and therefore contends that the Secretary improperly applied the medical-vocational guidelines.
 
 I.
 
 2
 Alsept filed his applications for disability benefits and SSI benefits on March 7, 1984, alleging disability due to a crippled hand and right ankle, arthritis in his back, and kidney and gland trouble. On July 18, 1984, after the applications were denied both initially and upon reconsideration, Alsept filed a request for a hearing before an administrative law judge (ALJ). Alsept's request was granted and a hearing was held on August 29, 1984. Since Alsept last met the earnings requirements of the Social Security Act on September 30, 1983, he had to establish disability prior to that time.
 
 
 3
 At the time of the hearing, Alsept was fifty-three years old, having been born on December 9, 1930. Alsept stopped attending school in the fourth grade when he was thirteen years old. He can read very little of the newspaper, and cannot write letters. With regard to his past employment, Alsept stated that he worked for twenty-three to twenty-five years as an automobile body repairman, and last worked in August of 1982. According to Alsept, he had to quit at that time due to pain in his back, right foot and left arm.
 
 
 4
 Alsept had injured his left arm in an automobile accident in 1950 which caused permanent damages to the ulnar nerve of his arm. He stated that as a result of the damage, the muscles in his left arm and hand are deteriorating, thus reducing the size of his left hand, which is his nondominant hand. Alsept testified that although his hand generally caused him pain "deep in the bone," he did not have feeling in about one-half of his hand. Elaborating further, he stated that he could not make a fist with his hand nor could he straighten his fingers. According to Alsept, he had limited use of his hand but could not handle small objects with it. He stated that his hand and arm did not prevent him from doing his past work as an autobody repairman because he had adapted to handling large objects with it.
 
 
 5
 With regard to complaints other than his hand, Alsept stated that he had disabling pain in his back, left leg and right ankle. Alsept had broken his right ankle in 1968 and testified that it had never healed correctly. Finally, Alsept claimed that arthritis contributes to his disability.
 
 
 6
 The following pertinent medical evidence was adduced at the hearing. Alsept's treating physicians, Dr. Janet White and Dr. Robert Salisbury, reported that they had seen Alsept for treatment since September of 1980, and had treated him for hypertension and prostatitis. While x-rays of Alsept's back taken in 1983 showed degenerative changes of the spine, an arthritis profile was negative for any type of arthritis, such as rheumatoid. As of March, 1984, the physicians' impressions were (1) hypertension, controlled; (2) prostatitis; (3) arthritis; (4) obesity; and (5) probabl[e] sciatic nerve irritation.
 
 
 7
 Alsept was examined consultatively by Dr. Samuel Weeks in September, 1983, at the request of the Secretary. Dr. Weeks noted Alsept's complaints of pain in his back, right ankle, left arm and chest. Dr. Weeks' impressions were of status post trauma to the left forearm, status post old comminuted fracture of the right ankle, status post trauma to the right ribs and back with chronic low back syndrome, chest pain, and essential hypertension. Dr. Weeks commented, however, that neither Alsept's back nor his ankle condition limited his range of motion. Dr. Weeks further commented that Alsept's hypertension was well-controlled. Dr. Weeks made no conclusions regarding the effect of Alsept's hand condition, although he did note that Alsept had "somewhat reduced" grip strength in his left hand as compared to his right.
 
 
 8
 Alsept was also examined consultatively by Dr. Gary Bray in April of 1984. Dr. Bray noted Alsept's injury to his left arm and hand and upon examination found that Alsept's grip strength was only 20 to 10 pounds in that hand as compared to 120 to 124 pounds in the right hand. Dr. Bray found Alsept's range of motion in his left hand to be passively normal, but observed that the hand showed intrinsic wasting and a mild clawing deformity. Dr. Bray also noted that Alsept's hand was "practically numb." Finally, Dr. Bray concluded that Alsept "certainly has a deficit in his non-dominant upper extremity." As to Alsept's complaints about his back, Dr. Bray noted that x-rays of the lumbar spine showed degenerative changes, very mild, with only minimal narrowing. There was no evidence of neurological involvement. After noting his impression of chronic low back pain with no evidence of radiculopathy, Dr. Bray stated that he doubted whether Alsept "could tolerate any activity that required repeated bending and stooping."
 
 
 9
 The ALJ rendered his decision on October 15, 1984, concluding that Alsept was not disabled as of the time he last met the disability insured status requirements on September 30, 1983. The ALJ determined that Alsept's inability to perform repeated bending and stooping or to lift and carry more than 20 pounds prevented him from doing his past relevant work as an autobody repairman but did not prevent him from performing a full range of light work. The ALJ further noted that the evidence failed to establish any neurological deficit or limitation of motion which would prevent Alsept from performing a full range of light work. Finally, the ALJ found Alsept's complaints of disabling pain to be not credible. In light of Alsept's age, marginal education, work experience and residual functional capacity to do light work, the ALJ determined that Rule 202.11 of the medical-vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, directed a finding of not disabled. The ALJ therefore denied Alsept's applications.
 
 
 10
 Alsept filed a request for review of the ALJ's decision which the Appeals Council denied on December 14, 1984. Thus, the ALJ's decision became the final decision of the Secretary as to Alsept's March 7, 1984 petitions.[1]
 
 
 11
 Alsept then filed an action for judicial review of the Secretary's decision. The case was submitted to a magistrate who filed a Report and Recommendation finding the Secretary's decision to be supported by substantial evidence and recommending dismissal of Alsept's action. Alsept then filed objections to the magistrate's Report and Recommendation with the district court. Upon de novo review of the record and consideration of the magistrate's Report and Recommendation and Alsept's objections thereto, the district court adopted the magistrate's recommendation. The court therefore dismissed Alsept's action in an order filed on June 18, 1986. This timely appeal followed.
 
 II.
 
 12
 Pursuant to 42 U.S.C. Sec. 405(g), the Secretary's findings are conclusive if they are supported by substantial evidence. Accordingly, our review is limited to determining whether there is substantial evidence in the record to support the findings. " 'Substantial evidence' means 'more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Services, 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). In determining this question, we examine the evidence in the record "taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980).
 
 
 13
 Alsept argues that the ALJ erroneously relied on the medical-vocational guidelines as being determinative of the question of disability in this case. Alsept bases this argument on several assertions. First, he contends that the evidence established that he has reduced use of his left hand. Second, he contends that this loss of use renders him unable to perform a full range of light work. Noting the principle that the medical-vocational guidelines only apply if the claimant is able to perform a full or wide range of jobs at the applicable work level, See Kirk, 667 F.2d at 529, Alsept concludes that the guidelines should not have been relied on in this case to render a determination of "not disabled."
 
 
 14
 Essentially, Alsept's arguments present the question of whether substantial evidence supports the ALJ's determination that Alsept is able to perform a wide range of light work. To resolve this issue, we must determine what effect, if any, Alsept's hand injury has on his ability to do light work. If Alsept has the ability to do a wide range of light work, then the ALJ was correct in applying the medical-vocational guidelines; however, if the evidence indicates that Alsept is incapable of performing a wide range, then the ALJ should not have applied the guidelines but instead should have obtained the assistance of a vocational expert to determine whether there are a significant number of available light work jobs which Alsept can perform.
 
 
 15
 For guidance in making the above determinations, Alsept refers the court to several Social Security Rulings (SSR).[2] SSR 83-10 elaborates on the definition of light work contained in 20 C.F.R. Secs. 404.1567(b), 416.967(b). It states that "[m]any unskilled light jobs ... require use of arms and hands to grasp and hold and turn objects [although] they generally do not require use of the fingers for fine activities to the extent required in much sedentary work." Thus, it appears that in order to do many light work jobs, Alsept must be able to use both hands to grasp, hold and turn objects.
 
 
 16
 Of more significant importance to this case is SSR 83-12, which discusses using the medical-vocational guidelines merely as a framework under special circumstances where a claimant's residual functional capacity does not coincide with any of the defined ranges of work and therefore no specific rule is applicable. In particular, SSR 83-12 discusses the ramifications of the loss of use of an upper extremity. It states that "partial loss of use of [an upper] extremity ... will require a more detailed evaluation of functional ability, including ... the person's remaining ability for fine and gross manipulating." The Ruling further observes that generally the number of jobs available to a person with loss of use is "less than the number represented by a full or wide range of light work." In cases involving a claimant who has loss of use of an upper extremity, the Ruling acknowledges that a vocational expert should normally be obtained "to determine the size of the remaining occupational base, cite specific jobs within the individual's [residual functional capacity], and provide a statement of the incidence of those jobs in the region of the individual's residence."
 
 
 17
 While this court has stated that SSRs are not binding on an ALJ,[3] we find that the analysis of SSR 83-12 is persuasive and applicable under the circumstances of this case. Dr. Bray in examining Alsept concluded that Alsept "certainly has a deficit" in his left hand. Further, Alsept's testimony offered at the hearing--concerning which the ALJ did not make an adverse credibility finding--indicates that he has lost partial use of his left hand. The ALJ found, based on the medical evidence, that Alsept has a "severe ulnar nerve deficit." Thus, under the analysis SSR 83-12 the ALJ should have recognized that Alsept did not have the residual functional capacity to perform a wide range of light work activity and the ALJ therefore should not have applied the medical-vocational guidelines to determine whether Alsept was disabled. Instead, the ALJ should have received the testimony of a vocational expert to determine whether Alsept could perform light jobs which existed in significant numbers. Accordingly, we find it necessary to remand this case to the district court with instructions to remand to the Secretary for the purpose of holding a hearing at which the testimony of a vocational expert regarding Alsept's residual functional capacity to perform light work jobs should be received.
 
 
 18
 In reaching this conclusion, we are unpersuaded by the Secretary's argument that since Alsept worked for over twenty years with his hand impairment, he cannot now claim disability because of it. This argument ignores the fact that Alsept's past relevant work was medium to heavy work which did not require refined use of his hand. As the ALJ concluded, Alsept can no longer perform his past relevant work because of his inability to do heavy lifting; rather, he can only do light work. Since light work requires different and more extensive use of the hands than does heavy work, the limitations on the use of Alsept's hand become more significant. Further, Dr. Bray recognized that Alsept's hand condition is a deteriorating one and thus may inhibit uses not previously affected.
 
 
 19
 Finally, since we are remanding this case, we do not reach the merits of Alsept's other claims of disability such as his claim of disabling pain. While we are not necessarily persuaded by these claims, we find it desirable to allow the Secretary on remand to consider any or all of Alsept's claims.
 
 
 20
 Accordingly, for the reasons stated above, we REVERSE the judgment of the district court and REMAND with instructions to remand to the Secretary.
 
 
 
 [1]
 Alsept's counsel informed this court at oral argument that Alsept filed a subsequent application for SSI benefits through which he obtained SSI benefits as of July, 1986 on the ground that he is mildly retarded. The question in the instant case remains whether Alsept established with respect to his March 7, 1984 applications that he was disabled prior to September 30, 1983
 
 
 [2]
 Social Security Rulings are "[p]recedent final opinions and orders and statements of policy and interpretations that have been adopted by the [Social Security] Administration [but] are not published in the Federal Register." 20 C.F.R. Sec. 422.408
 
 
 [3]
 See Wages v. Secretary of Health & Human Services, 755 F.2d 495, 498 (6th Cir.1985), but see 20 C.F.R. Sec. 422.408