904 F.2d 36
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Farmer BLEVINS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-6069.
 United States Court of Appeals, Sixth Circuit.
 June 4, 1990.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges, and CHARLES W. JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Phyllis L. Robinson, counsel for successful Social Security claimant Farmer Blevins, filed a motion for attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. Sec. 2412. The district court denied the motion, finding that an award of fees under the EAJA would be inappropriate, since the position of the United States during the adversarial process was "substantially justified" under 28 U.S.C. Sec. 2412(d)(1)(A). Finding that the district court did not abuse its discretion in denying the motion, we affirm.
 
 
 2
 * Blevins had worked as a coal miner, a truck driver, and a general laborer, all unskilled jobs requiring heavy exertion. On July 23, 1983, Farmer Blevins applied for disability insurance benefits, alleging disability since November 22, 1982 due to a back injury. His application was denied in August 1983 and on reconsideration in December 1983.
 
 
 3
 In March 1983, Blevins and his wife were involved in a car accident in which his wife was killed. The medical records indicate that he was treated for depression in August 1983. In March 1984, Blevins was diagnosed as having chronic L5-S1 disc disease.
 
 
 4
 A hearing was held before an administrative law judge (ALJ) in March 1984. On August 13, 1984, the ALJ issued a decision denying benefits on the grounds that Blevins could perform a full range of sedentary work and that the grids therefore "direct a conclusion that ... he is not disabled." On November 1, 1984, the Appeals Council denied Blevins's request for review. On November 14, 1984, Blevins appealed to the district court, which affirmed the Secretary's decision.
 
 
 5
 After Blevins appealed to this court, the Secretary filed a motion to remand the case for reconsideration of Blevin's mental impairment, pursuant to Sec. 5(c)(1) of the 1984 amendments to the Social Security Act. The 1984 amendments instructed the Secretary to promulgate new regulations for adjudicating claims alleging a mental impairment. On August 28, 1985, the new regulations were published in the Federal Register. Sec. 5(c) requires the Social Security Administration to reexamine any applications involving mental impairments where the final administrative denial was made after October 9, 1984. Since the final decision on Blevins's application was made on November 1, 1984, we granted the Secretary's motion.
 
 
 6
 On rehearing, a different ALJ found Blevins to be disabled. This decision was based partly on evidence that came to light only after the remand. On June 14, 1983, Blevins had undergone back surgery to remove the disc at L5-S1. The surgery failed; a major ligament in the spine was severed and the pain was not relieved. The spine was therefore unstable. Furthermore, a report by a psychiatrist, Dr. Robert J. Dane, diagnosed "a dysthymic disorder of fairly severe intensity." This combination of impairments prevented Blevins from engaging in substantial gainful activity. The Appeals Council adopted the ALJ's recommendation to award Blevins benefits from his alleged onset date of November 22, 1982. On February 21, 1989, the district court granted the Secretary's motion to affirm the award, and dismissed the action.
 
 
 7
 The genesis of this dispute actually lies in what occurred after the district court dismissed the case. On March 4, 1989, the Social Security Administration sent Blevins and Robinson a letter explaining what benefits Blevins would receive. The letter stated that Blevins would be receiving $22,510.28 for past due benefits through February 1989. He was to receive $461 each month thereafter. Pursuant to a contingent fee contract between Blevins and Robinson, the Social Security Administration withheld $7349.72 from Blevin's past due benefits. The letter suggested that if Robinson wanted to collect her fee, "a request to have it approved should be sent to us right away."
 
 
 8
 On April 18, 1989, the Social Security Administration mailed Blevins a second letter, this time informing him that he had been overpaid. Because Blevins had been earning workers' compensation payments of $15 per week more than Blevins had reported, his lump sum payment of past due benefits was $2795.03 too high. In addition, Blevins had collected an overpayment in the amount of $3225 on his late wife's social security number. Total overpayment was $6020.03.
 
 
 9
 After correcting for the overpayments, Robinson's 25% fee was reduced from $7349.72 to $5387.75. Since the total overpayment exceeded the amount now to be withheld for attorney's fees, the Social Security Administration used the amount withheld for attorney's fees to reduce the overpayment amount to $632.28. In the meantime, however, the Social Security Administration had sent Robinson a letter on April 10, 1989 stating that "[y]ou are hereby authorized to charge the claimant the sum of $7000.00 for services rendered" (emphasis in original). The letter stated that "[a] check will be sent to you from the past-due benefits."
 
 
 10
 On May 3, 1989, the Social Security Administration sent Blevins another letter informing him that although his attorney had been authorized a fee of $7000, the money had not been withheld. Therefore, "your attorney will look to you to pay the authorized fee." In the alternative, the letter advised Blevins that the Social Security Administration could withhold the amount of the fee from his future benefits. Robinson received a copy of this notice, but did not act on it by requesting payment from Blevins or by asking for her fee to be withheld from Blevins's future benefits.
 
 
 11
 On May 2, 1989, Robinson filed her motion for attorney's fees under the EAJA. Robinson also requested that the court estop the Secretary from denying that she was owed the fees and that the court award punitive damages for the conversion by the Social Security Administration of funds set aside for her attorney's fees. On August 9, 1989, the district court denied the motion.[1]
 
 II
 
 12
 Robinson's application for fees under the EAJA requested an award of $6593.45, representing 52.75 hours of work at $125 per hour. The EAJA permits attorneys who represent claimants in lawsuits against the United States to collect fees from the government under certain circumstances:
 
 
 13
 [A] court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ..., including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
 
 
 14
 28 U.S.C. Sec. 2412(d)(1)(A) (emphasis added).
 
 
 15
 The statute also requires the party seeking an award of fees to submit an application to the court "within thirty days of final judgment in the action." 28 U.S.C. Sec. 2412(d)(1)(B). A "final judgment" is one that is final and not appealable. 28 U.S.C. Sec. 2412(d)(2)(G). This subsection has been interpreted to mean that a prevailing party has 30 days from the final disposition of the case on the merits--that is, when a party's right to appeal the order has lapsed--to file an application for fees, not just 30 days from the rendering of the district court decision. Feldpausch v. Heckler, 763 F.2d 229, 232 (6th Cir.1985).
 
 
 16
 The court found that Robinson's application was timely filed because it was filed within 30 days of the last day on which a party could appeal the court's February 21, 1989 order. The court refused to grant an award under the EAJA, however, because the Secretary's original denial of benefits was "substantially justified." "Substantially justified" means "justified to a degree that could satisfy a reasonable person." Jankovich v. Bowen, 868 F.2d 867, 869 (6th Cir.1989) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)). The court found that the Secretary had a "reasonable belief" that Blevins was not disabled when he first applied for benefits. It was not until after the remand that evidence of a disabling back condition and a sufficiently severe dysthymic disorder came to light. Since the Secretary's original position was substantially justified, Robinson was not entitled to an award under the EAJA.
 
 
 17
 Robinson argues that the evidence that formed the basis for the eventual finding of disability was present all along. Robinson emphasizes that Blevins had been diagnosed as suffering from degenerative disc disease before the first ALJ denied the application on August 13, 1984. Robinson claims that Blevins had pneumoconiosis at the time; a June 11, 1984 examination by Dr. Glen R. Baker indicated that Blevins suffered from "occupational pneumoconiosis, category 1/0."
 
 
 18
 The Secretary makes three arguments in response: that Robinson's EAJA petition was filed too late, that Blevins was not a "prevailing party" within the meaning of the EAJA, and that the Secretary was "substantially justified" in originally finding Blevins not disabled. We reject the first two arguments, but we are persuaded by the third.
 
 
 19
 The Secretary asserts that Robinson's petition for fees under the EAJA did not meet the filing requirements because it was filed more than 30 days after final judgment in the action. The final decision in this case was handed down by the district court on February 21, 1989. On that date, the court ordered that the case be dismissed, since no further issues needed to be resolved. The Secretary argues that the 30-day time limit for filing an EAJA petition began to run on February 21, 1989 and expired long before Robinson's May 2, 1989 filing. The district court rejected this argument, citing case law in this circuit that clearly states the rule that the 30 days begins to run from the day on which a party could last appeal the final decision, not from the day of the final decision itself. See Feldpausch v. Heckler, 763 F.2d at 232.
 
 
 20
 The Secretary argues that this case presents a problem different from those addressed in cases like Feldpausch. Here, the Secretary would have no intention of appealing an order affirming his decision, and Blevins would not choose to appeal the very award of benefits he had been seeking. Therefore, February 21, 1989 was, for all intents and purposes, the date this case was concluded.
 
 
 21
 We reject the Secretary's argument and apply strictly the rule that the time for filing an EAJA petition begins to run 30 days--or, in the case of an appeal involving the United States, 60 days--after a final decision by the district court.
 
 
 22
 Neither the EAJA nor Federal Rule of Appellate Procedure 4(a)(1) makes an exception for cases where an appeal, though possible, is unlikely. The EAJA has consistently been interpreted to permit a fees petition to be filed any time before 30 days after "a party's right to appeal the order has lapsed." Feldpausch, 763 F.2d at 232. We therefore refuse to dismiss the EAJA petition on the ground that it was filed untimely.[2]
 
 
 23
 The Secretary's second argument is that Blevins was not a "prevailing party" within the meaning of the EAJA, and therefore not entitled to an award under the statute. There was no judicial finding that the Secretary erred in his resolution of the factual issues in this case. The case was remanded on May 11, 1987 only because the Secretary argued that Sec. 5(c) of the 1984 amendments required a reconsideration of the case.
 
 
 24
 The Secretary failed to present this argument to the district court, and it is not properly before us. The Secretary did not cross-appeal on this, or any other, ground. We therefore decline to consider this issue.
 
 
 25
 We do agree, however, that the Secretary was "substantially justified" in finding Blevins not disabled in 1984. In Pierce v. Underwood, 487 U.S. at 565, the Supreme Court reasoned that there are two commonly used connotations of the word "substantially," and that "the one most naturally conveyed ... is not 'justified to a high degree,' but rather 'justified in substance or in the main'--that is, justified to a degree that could satisfy a reasonable person." The government's position in this case met such a standard.
 
 
 26
 A district court's finding that the government's position was "substantially justified" is reviewed under the "abuse of discretion" standard. Pierce, 108 S.Ct. at 2547; Jankovich, 868 F.2d at 869. We find that the district court did not abuse its discretion in denying the EAJA petition.[3]
 
 
 27
 The first ALJ reviewed the medical records and testimony and found that the evidence of the severity of Blevins's back pain was contradictory. Even taking into account Blevins's breathing impairment and psychological impairment, his overall condition did not preclude performing sedentary work.
 
 
 28
 The doctor who performed the back surgery stated that he was not certain why Blevins continued to have back pain. One chest X-ray showed no signs of occupational pneumoconiosis, while another X-ray showed pneumoconiosis, category 1/0. Although the psychological reports indicated that Blevins was depressed after his wife's death, they also found no psychological limitation that would constitute a major functional impairment.
 
 
 29
 A different ALJ reviewed the evidence upon remand and concluded that the back surgery had failed. New evidence was submitted with Blevins's new application for benefits that showed a severe dysthymic disorder. It was largely on this basis that the Secretary agreed to reverse his earlier decision.
 
 
 30
 The district court compared all of the evidence concerning Blevins's functional capacity at the time of the first hearing to all such evidence at the time of the second hearing. We agree with its findings and conclude that there was no abuse of discretion in finding the government's earlier position to be substantially justified.[4]
 
 
 31
 The order of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Since the court found that Robinson did not have a valid EAJA claim, it denied her request to estop the Secretary from denying that he owed her any fees. The court also denied the request for punitive damages, since the EAJA does not provide for the payment of punitive damages
 
 
 [2]
 The Secretary also asserts that Robinson's petition did not conform to the EAJA's pleading requirements. Because the record contains insufficient evidence to support this claim, we do not find any jurisdictional bar to exist
 
 
 [3]
 This circuit has, under certain circumstances, been willing to find an abuse of discretion where the district court had denied an EAJA petition. In Myrick v. Secretary of Health and Human Services, No. 88-3351 (6th Cir. March 21, 1989) (unpublished per curiam), the district court had issued an order denying a motion for attorney's fees under the EAJA on the grounds that "the case concerns conflicting medical evidence and that the Government was justified in proceeding on the evidence favorable to its position," even though the court had earlier awarded benefits to the claimant because the medical evidence of disability was "not contradicted." This court found that the district court had abused its discretion by not adequately explaining the basis for its seemingly contradictory findings. In this case, however, the basis for the Secretary's reversing his findings is sufficiently clear
 
 
 [4]
 The first ALJ determined that Blevins was capable of performing the full range of sedentary work, despite his conclusion that Blevins could only perform work "with an option to sit or stand at will." His findings were issued before our decision in Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir.1985), where we held that a claimant who "must alternate between sitting and standing as required for comfort" may not be capable of performing the full range of sedentary work as defined by 20 C.F.R. Sec. 404.1567(a). See also Howse v. Heckler, 782 F.2d 626 (6th Cir.1986) (reversing a determination that claimant could perform the full range of sedentary work despite his inability to sit or stand for long periods of time). The Wages standard for disability determinations applied during Blevins's second hearing, but not during his earlier hearing in 1984