869 F.2d 1490
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ralph FRISBY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-1386.
 United States Court of Appeals, Sixth Circuit.
 March 2, 1989.
 
 Before MILBURN and BOGGS, Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Ralph Frisby appeals from the district court's judgment which affirmed the Secretary of Health and Human Services' determination that he is not disabled and, therefore, is not entitled to disability insurance benefits under 42 U.S.C. Sec. 405(g). Because the record contains substantial evidence to support the findings of the Administrative Law Judge (ALJ), we affirm.
 
 I.
 
 2
 Frisby filed his application for disability insurance benefits on October 30, 1985, alleging he became disabled on September 12, 1984 due to back problems, arthritis, high blood pressure, and nerves.[1] The Secretary denied claimant's application both initially and upon reconsideration. Claimant then requested a hearing before an ALJ, which was held on July 17, 1986.
 
 
 3
 Claimant was forty-three years old, a younger person, see 20 C.F.R. Sec. 404.1563(b), at the time of the hearing. He has a high school education, and also has about two years of training in upholstering. See 20 C.F.R. Sec. 404.1564(b)(4). His relevant work experience is as a utility man/janitor, which a vocational expert at the hearing characterized as unskilled and medium exertionally. See 20 C.F.R. Secs. 404.1567(c), 404.1568(a).
 
 
 4
 The medical evidence documents that claimant does have a history of severe back problems. He underwent back surgery in October of 1982, due to severe lower lumbar stenosis and degenerative disc disease. Claimant's treating orthopedic surgeon, Dr. Dale Rowe, M.D., noted that claimant's initial pain after the surgery was essentially gone within two weeks of the surgery and he remained pain free for about one year. When claimant began to complain of reappearing pain, Dr. Rowe prescribed an abdominal corset, physical therapy and exercise but to no avail. Medical records indicate that the only pain medication taken by claimant was Tylenol. In December of 1984, he was hospitalized when he complained of pain in his right lower back that radiated down the lateral aspect of his legs and right foot.
 
 
 5
 A myelogram indicated a laminectomy as well as marked narrowing of the L5-S1 disc space. There was sclerosis and spurring of the vertebrae body end plates and an irregularity of the thecal sac of L4 and L5 levels. The possibility of arachnoiditis was noted. By February of 1985, Dr. Rowe opined that even though Frisby was feeling better, he did not think Frisby was ready "to go back to his regular work."
 
 
 6
 Claimant underwent a consultative examination on June 24, 1985, by Dr. Christine E. Anguras, D.O. This physician concluded that Frisby had degenerative joint disease of the lumbar spine by history and probable lumbar radiculitis. Range of motion in the lumbar spine was slightly limited in forward flexion and hyperextension, and was normal in lateral flexion and rotation. The physician also noted that claimant's reflexes were diminished in the patellar region bilaterally and straight leg raising was negative bilaterally, but stated that claimant was able to squat and recover, and could climb onto the examination table without difficulty.
 
 
 7
 In January of 1986, Dr. K.S. Kim, M.D., also performed a consultative examination. He noted the slight limitation of motion of the dorso-lumbar spine, and stated that straight leg raising was seventy-five degrees on the right and eighty degrees on the left. Physical examination of the extremities revealed no limitation of motion, no deformities and no peripheral edema.
 
 
 8
 In August of 1986, Frisby underwent a psychological and intellectual functioning examination by Garry A. Rasmussen, M.A., and Dr. Ronald P. Deboey, Ph.D. These psychologists found that claimant had an overall IQ of eighty-three. The ALJ found that he did not have a severe mental impairment.[2] Even though claimant alleged that despite his high school education, he was an illiterate, the ALJ noted claimant's results on the Wide Range Achievement Test indicating he was able to pronounce and read words at a sixth grade level. Based upon the psychological testing performed on claimant as well as the fact that claimant did complete high school, the ALJ concluded that claimant does have sufficient reading ability to satisfy the literacy requirements for Social Security and is therefore not illiterate.
 
 
 9
 The record also reflects that claimant has a history of hypertension and does suffer from some anxiety. Claimant's family physician, Dr. Salvadore A. Yannitelli, M.D., placed Frisby on Inderal which has kept the hypertension under control. He is also taking Tranxene to control the anxiety. Frisby did not testify to any problems with anxiety or nerves at the hearing, and the ALJ did not notice the existence of anxiety during the hearing.
 
 
 10
 Frisby testified at the hearing that he could no longer work at his previous job because of the sharp pain in his back radiating into his legs. He explained that he experienced pain eighty-percent of the day and he relieved the pain by lying down. He stated the only job he could perform would be one in which he was allowed to lie down three or four times a day for one-half hour at a time. Frisby explained he could sit for no more than twenty minutes and stand for no more than ten minutes. He testified that while driving the fifty miles to the hearing he had to stop three times to stretch his legs. At most he could walk an eighth of a mile and at best he could lift a gallon of milk while grocery shopping.
 
 
 11
 A vocational expert testified at the hearing that if Frisby's testimony was given full credit, he could not return to his past work or perform any other work. If he were limited to sedentary employment, Frisby could perform unskilled sedentary work with a sit/stand option. The vocational expert testified that there existed 28,000 jobs in the state of Michigan that Frisby could perform, examples of which are small batch assembly worker in the automotive electronic industries, a gate guard, who could check identification and watch a television monitor, and a hand packager of lightweight products.
 
 
 12
 Based on all the medical evidence, the ALJ found that Frisby was not working and had not engaged in substantial gainful activity since September 12, 1984. Frisby had a severe status-post lumbar laminectomy with arachnoiditis and his severe impairment did not meet or equal any of the listed impairments in 20 C.F.R. Pt. 404, subpt. P, App. 1 (1987). The ALJ found, however, that Frisby's testimony was not very credible and that his pain was not as severe as alleged. The ALJ found that Frisby retained the residual functional capacity to perform a full range of sedentary work. The ALJ concluded that Frisby had retained the residual functional capacity to perform the significant number of sedentary jobs documented by the Medical-Vocational Guidelines (the "Grid") and described by the vocational expert. See Rule 201.27 of Table No. 1, App. 2, subpt. P of Pt. 404.
 
 
 13
 This decision became the final decision of the Secretary when the Appeals Council denied claimant's request for review on January 29, 1987.
 
 
 14
 Frisby then filed the present action for judicial review by the district court pursuant to 42 U.S.C. Sec. 405(g). The district court granted the Secretary's motion for summary judgment.
 
 
 15
 This timely appeal followed. The sole issue before this court is whether the district court properly held that the Secretary's decision is supported by substantial evidence.
 
 II.
 
 16
 This court has jurisdiction to review the district court's judgment in a social security case in the same manner as a judgment in other civil actions. 42 U.S.C. Sec. 405(g). Pursuant to section 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence. Accordingly, our review is limited to determining whether there is a substantial evidence in the record to support the findings.
 
 
 17
 " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining whether the Secretary's findings are supported by substantial evidence, we examine the evidence in the record "taken as a whole," Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the record taken as a whole might support a different conclusion. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam).
 
 
 18
 Claimant argues, with respect to his subjective complaints of pain, the ALJ's findings are not supported by substantial evidence. As support, claimant asserts the ALJ applied an improper standard in considering his allegations of disabling pain. We disagree.
 
 
 19
 Our case law has established the following test for evaluating a claimant's subjective complaints of pain.
 
 
 20
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 21
 Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.1986).[3]
 
 
 22
 Claimant's attacks on the Duncan analysis are without merit. The test does not require absolute objective evidence of the specific degree of pain alleged. In the alternative, a reasonable relationship between the objectively established medical condition and the alleged pain would also satisfy the Duncan test. Moreover, "[a] panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification or this Court sitting en banc overrules the prior decision." Salmi v. Secretary of Health & Human Servs., 774 F.2d 685, 689 (6th Cir.1985).
 
 
 23
 The ALJ determined that Frisby had a severe impairment related to his back. This finding is supported by substantial objective medical evidence. Accordingly, claimant meets the first prong of the Duncan test--there is objective medical evidence of an underlying medical condition.
 
 
 24
 The ALJ also found Frisby's subjective complaints of disabling pain were not supported by objective evidence. This is tantamount to a finding that claimant failed to satisfy the second prong of the Duncan test. We also find substantial evidence in the record to support this finding because neither of the alternative tests of the second prong are satisfied.
 
 
 25
 First, there is substantial evidence to support a finding that there is not objective medical evidence which confirms the severity of the alleged pain. Although Frisby claimed to have disabling pain, none of the treating or consultative physicians diagnosed the pain as severe or disabling. All the medical examinations conclude that claimant's range of motion is only slightly limited. In fact, during a recent examination, Frisby told Dr. Kim that if he "keeps moving around" the pain goes away.
 
 
 26
 Second, there is substantial evidence to support a finding that Frisby's objectively determined medical conditions are not so severe that they could be reasonably expected to produce disabling pain. Claimant's treating physician, Dr. Rowe, concluded that Frisby could perform work that did not require climbing ladders, or lifting, pulling or pushing over fifty pounds. No other doctors examining the claimant placed restrictions on his activities. Lack of restrictive measures by claimant's treating physician can support the ALJ's finding that claimant is not disabled. Nunn v. Bowen, 828 F.2d 1140, 1145 (6th Cir.1987). Also, when determining the severity of the alleged pain, the Secretary may consider the fact that a claimant takes only mild medication. Kimbrough v. Secretary of Health & Human Servs., 801 F.2d 794, 797 (6th Cir.1986). In the instant case, Frisby was only taking mild over-the-counter analgesics for his pain.
 
 
 27
 The determination of disability based on pain depends largely on the credibility of the claimant. The ALJ had the opportunity to observe the demeanor of claimant, his observations are invaluable and should not be discarded lightly. See Beavers, 577 F.2d at 387. The ALJ found, after weighing claimant's credibility, that claimant's allegations of pain were disproportionate to the underlying medical condition.
 
 
 28
 In light of all the medical evidence presented in the record, the ALJ concluded that claimant has the residual functional capacity to perform a full range of sedentary work. Claimant's treating physician followed conservative treatment methods and along with other consultative physicians found claimant's range of motion to be only slightly restricted. In addition, claimant testified that he was able to care for personal needs, do light housework and grocery shop. The ALJ properly applied the "Grid" to determine claimant's vocational profile and that he could perform sedentary jobs existing in the national economy and is therefore not disabled. The grid directs a conclusion that a claimant is either disabled or not disabled only when the components of the grid precisely match the claimant's characteristics. Kirk, 667 F.2d at 531.
 
 
 29
 Frisby argues that the ALJ did not properly consider the claimant's mental impairment which would preclude conclusive application of the grid. A non-exertional impairment must be taken into account during the grid application only when the impairment significantly limits a claimant's ability to do a full range of work at a designated level. Kimbrough, 801 F.2d at 796. However, the ALJ found that Frisby's mental impairment was not severe under the regulations and did not significantly limit the level of work the claimant could perform. See Wages v. Secretary of Health and Human Servs., 755 F.2d 495 (6th Cir.1985). Even though not required, the ALJ, in addition to applying the grid, considered the testimony of a vocational expert. The testimony consisted of properly developed hypotheticals which set out all of the claimant's relevant characteristics. The ALJ included only the limitations that are supported by substantial evidence in presenting the hypothetical to the vocational expert.
 
 
 30
 Accordingly, having concluded that substantial evidence supports the final decision of the Secretary, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 Frisby filed a previous application on May 27, 1985, alleging that he became disabled on September 12, 1984. This application was denied initially by the Social Security Administration on July 10, 1985, and he sought no further review. Therefore, the final decision of the Secretary was that Frisby was not disabled through July 10, 1985
 
 
 [2]
 Section 12.05 of the "Listing of Impairments" for mental retardation found in Appendix 1 requires that an individual have an IQ of sixty-nine or less and/or other significant problems in order to be considered to have an impairment which meets the "Listings."
 
 
 [3]
 As stated in Duncan, the statutory standard on which the opinion is based was only temporary, applying to "determinations made prior to January 1, 1987." However, in McCormick v. Secretary of Health & Human Services, 861 F.2d 998, 1003 (6th Cir.1988), this court held that the standards announced in Duncan continue to apply