**Patricia WAGES, Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.**

No. 84–5473.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 15, 1985.

Decided Feb. 21, 1985.

William B. Mains (argued), Northeast Kentucky Legal Services, Inc., Morehead, Ky., for plaintiff-appellant.

Louis De Falaise, U.S. Atty., Karl L. Anderson, Asst. U.S. Atty., Lexington, Ky., Paula L. Kocher (argued), Asst. Regional Atty., U.S. Dept. of H.H.S., Atlanta, Ga., for defendant-appellee.

Before LIVELY, Chief Judge, MARTIN and JONES, Circuit Judges.

PER CURIAM.

This case presents the issue of whether a claimant of social security disability benefits who cannot sit or stand for prolonged periods of time, but must alternate between sitting and standing as required for comfort, is capable of performing "sedentary" work as defined by 20 C.F.R. § 404.-1567(a) (1984). Answering this question in

the negative, we reverse and remand this case for an award of benefits.

Claimant, Patricia Wages filed an application for supplemental security income disability benefits on July 3, 1978. After her application was denied, Wages requested a hearing. The ALJ found that Wages was not disabled, and the Appeals Council's decision became the final decision of the Secretary. Wages then filed a timely complaint for review with the district court. The district court, on May 7, 1984, entered judgment granting the Secretary's motion for summary judgment. On May 29, 1984, Wages filed this appeal.

Patricia Wages was 37 years of age at the time of her administrative hearing on June 6, 1979. Wages has an eighth grade education, and has had no vocational training. Wages has very little work experience. Her last job was as a babysitter in 1971.

Wages testified that her main medical problem is with her spine. She testified that it is stiff, and that she cannot stoop, bend, or lift anything without great difficulty. She testified that her back hurts when she sits for long periods, especially her lower back. She also suffers upper back pain if she tries to do anything while sitting or leaning forward. Wages testified that her eyesight is poor. She stated that she has difficulty judging distances, and that this affects her ability to drive and to do simple tasks such as pouring liquids into a cup.

Wages also testified that she has breathing problems. The record reflects that she occasionally gasped for breath at the hearing, and that she testified that she could not walk up one flight of stairs without being out of breath. She also stated that when she attempts to walk to town, a distance of one-quarter of a mile, she gets out of breath occasionally. To walk this distance she must go slow, and sit to rest on the way. Wages testified that her ribs bother her due to curvature of her spine, and that she has difficulty moving her head back and forth. In addition, she testified that her nerves bother her, that she gets easily upset, and that strangers bother her. Wages testified that she takes valium, dilantin, estrominithin, and other miscellaneous medications. Wages' daily activities are very limited. Her children do most of the house cleaning. She stated that about all she can do is some cooking and dish cleaning.

The most relevant evidence concerning Wages' musculoskeletal impairments is from Drs. Charles Riggsby and R. Thomas Fossett. Dr. Riggsby conducted an "all systems disability examination" on August 28, 1978 for the Kentucky Division of Disability Determinations. He noted the claimant had difficulty bending and turning her head from side to side, and estimated the limitations of motion in her back and neck at 30 to 40 percent. Dr. Riggsby's impression was kyphoscoliosis (lateral curvature of the spine and anteroposterior hump), moderately severe, and pectus excavatum (depressed sternum), moderately severe.

Dr. Fossett, who specializes in orthopedic surgery, conducted an orthopedic evaluation on November 10, 1978. His medical impression was Klippel-Feil Syndrome—a congenital anomaly characterized by a short and wide neck, low hairline, reduction in the number of cervical vertibrae, and fusion of the cervical spine. Dr. Fossett also diagnosed idiopathic thoracic scoliosis. He noted Wages has some limitations due to her congenital abnormalities, and that Wages needed to limit heavy lifting, stooping, and prolonged sitting or standing.

Dr. Robert J. Salisbury treated Wages between 1971 and 1976. In a letter dated April 27, 1979, he stated Wages' condition made it extremely difficult for her to do any type of lifting because her back was not stable enough to allow her to elevate over 15 pounds. He also stated that she should not do manual labor because of her physical condition.

The only evidence concerning Wages' eyesight is from Dr. Brian E. Wentz, an optometrist. He examined her for the Bureau of Rehabilitation on January 9, 1979, and noted a lack of binocularity. Dr.

Wentz stated, "This results in a much poorer depth perception ... and may result in a lower performance when it comes to judging distances when driving."

The record reflects a history of psychological problems. As early as 1961, Wages was in Eastern State Hospital in Lexington, Kentucky. Dr. Ranjit Sinha, a psychiatrist, saw Wages in 1975 and 1976. He stated that there was a possibility of schizophrenia, and described Wages as, "basically a neurotic individual with phobic anxious and psychosomatic components. She certainly appears to have a schizoid personality ...".

Consultative psychiatric and psychological examinations were conducted on Wages on July 3, 1979. Dr. Donald I. George, a psychiatrist, diagnosed claimant to have, "psychoneurosis, anxiety reaction with some depressiveness and neurasthenic features." He further stated, "The combination of her physical and emotional problems does add up to a significant handicap." He suggested that with vocational training it may be possible for her to be rehabilitated to the point where she could perform productive work.

Dr. Harold W. Meek, a clinical psychologist, completed a residual functional capacity form regarding Wages' psychiatric impairment. He found it to be moderately severe as it affects her ability to relate to other people, and moderate regarding restriction of daily activities and constriction of interests.

The ALJ found that Wages' non-exertional impairments do not significantly affect the level of work that she can do. This amounts to a finding that these impairments are not severe. 20 C.F.R. § 404.-1521. He concluded that her exertional impairments are severe. The ALJ concluded that, despite the severity of her exertional impairments and her need to alternate between standing and sitting, Wages has the residual functional capacity for substantial gainful employment of a sedentary nature.

The district court adopted the magistrate's Report and Recommendation. The magistrate had found that the Secretary properly relied on the medical vocational guidelines despite the fact that Wages has some non-exertional limitations. The magistrate noted that these non-exertional limitations were not found to be severe.

Review of the Secretary's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the Secretary's decision. "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g) (1976). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). In determining whether the evidence is substantial we must " 'take into account whatever in the record fairly detracts from its weight.' " *Beavers v. Secretary of H.E.W.,* 577 F.2d 383, 387 (6th Cir.1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)).

The ALJ relied on the grid in this case to show that Wages is not disabled. Wages argues that reliance on the grid was improper in her case. She notes that in applying the grid, an ALJ must make specific findings of fact regarding a claimant's residual functional capacity, age, education, and work experience. *See Kirk v. Secretary,* 667 F.2d 524, 528 (6th Cir.1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). Each of these findings must be based on substantial evidence. *Id.* at 535.

We find that there was not substantial evidence to support a finding that Wages is capable of performing sedentary work. The record clearly shows that claimant cannot sit or stand for long intervals but must be able to move about as she finds necessary. Her testimony at the ALJ hearing was that she could not sit for very long periods of time without incurring consider-

able lower back pain. She further testified that her upper back gives her pain when she sits and attempts activity or sits forward. In addition, Dr. Fossett stated Wages should limit lifting, stooping, and prolonged sitting or standing. There is no evidence in the record that contradicts either Wages' testimony or Dr. Fossett's opinion. In fact, the record clearly indicates that Wages suffers from a severe deformity of her back diagnosed as scoliosis by Dr. Fossett. Dr. Sinha described her as having a "hunch-back appearance," and Dr. Riggsby, a consultative physician, stated "she has obvious severe kyphoscoliosis." Even the ALJ noted that her kyphosis was "very apparent." In spite of this evidence, the ALJ, in a conclusionary manner, found that Wages could perform sedentary work. This conclusion was not supported by substantial evidence.

20 C.F.R. § 404.1567(a) (1984) defines sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

The concept of sedentary work contemplates substantial sitting as well as some standing and walking. Alternating between sitting and standing, however, may not be within the definition of sedentary work. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.1984). As the court in *Ferraris* noted, the Secretary recently suggested in Ruling SSR 83–10 that sedentary work will generally involve sitting for six hours out of an eight hour work day. *Id.* In SSR 83–12, the Secretary has stated:

> In some disability claims, the medical facts lead to an assessment of [residual functional capacity] which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for a while before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy—typically professional and managerial ones—in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. *However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.* In cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base.

(Emphasis added).

We recognize that these guidelines are not binding on the ALJ. We note, however, that several courts have held that a claimant cannot perform sedentary work if the claimant must alternate between sitting and standing. In *Davis v. Schweiker*, 536 F.Supp. 90, 100 (N.D.Cal.1982), it was found to be improper to hold that the claimant could do a full range of sedentary work since the evidence demonstrated the claimant could work only if it permitted him to alternate between sitting and standing as required by his comfort. Likewise, *Martin v. Schweiker*, 562 F.Supp. 912, 919 (D.Kan. 1982), held, "there is no substantial evidence *that plaintiff* [who must periodically sit, stand, or lie down to relieve pain] can

perform even sedentary work of any type, much less the entire range of sedentary work." *Deutsch v. Harris,* 511 F.Supp. 244, 249 (S.D.N.Y.1981), held that a claimant does not fall within the concept of sedentary work if he can only do work that must allow alternate sitting and standing as required for comfort.

Because the evidence showed that Wages must be allowed to alternate between sitting and standing for her comfort, we find that there was not substantial evidence to support the ALJ's conclusion that Wages could perform sedentary work. Consequently, reliance on the grid was error. *Cavitt v. Schweiker,* 704 F.2d 1193, 1195 (10th Cir.1983); *Martin v. Schweiker,* 562 F.Supp. 912, 919 (D.Kan.1982). We, therefore, REVERSE AND REMAND for an award of benefits.