**Elaine I. McCORMICK,**
**Plaintiff–Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
**Defendant–Appellee.**

No. 87–1828.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 6, 1988.

Decided Nov. 25, 1988.

Rehearing and Rehearing En Banc Denied Jan. 12, 1989.

Brian M. Barkey (argued), Flint, Mich., for plaintiff-appellant.

Robert Haviland, Asst. U.S. Atty., Flint, Mich., Robert E. Hanson (argued), Dept. of HHS, Chicago, Ill., for defendant-appellee.

Before KEITH, GUY and RYAN, Circuit Judges.

RYAN, Circuit Judge.

Plaintiff appeals the order of the district court affirming the Secretary's denial of Social Security disability benefits. We are required in this case to determine whether the standards for evaluating claims of pain, as announced in *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847 (6th Cir.1986), apply to cases decided by the Secretary after the "sunset" of the Social Security Disability Reform Act of 1984. Because we hold that *Duncan* does apply to post-Reform Act cases, the Secretary's denial of benefits is affirmed.

## I.

Plaintiff-appellant Elaine McCormick was born on August 23, 1935. She is a high school graduate and has three years of nurse's training. Prior to January 22, 1983, she had worked for many years as a registered nurse, rising to the position of head nurse in the labor and delivery ward of a local hospital. On that date, she was in a serious automobile accident. She suffered a fractured right ankle, lacerations of her chin, deep lacerations in her right knee, and five fractured ribs.

Claimant filed for disability benefits on January 18, 1984. She claimed disability due to her broken right ankle, the arthritis in her foot, and severe migraine headaches which developed about six months after the accident. At a hearing held on November 2, 1984 before an Administrative Law Judge ("ALJ"), claimant testified that while walking, her ankle burns and swells painfully. While sitting, it stiffens and then begins to hurt. She estimated that she is able to stand or walk for only thirty minutes at a time, while she is capable of sitting from between thirty minutes and one hour at one time. She testified that she had suffered headaches off and on since the accident, and that they seem to worsen as time passed. She testified that she had severe migraine headaches once every two to three weeks that generally lasted for a day and caused vomiting and general nausea. She also testified that she needed to elevate the ankle at least to the level of her knee in order to relieve the pain and swelling.

The medical evidence in the record substantiates claimant's testimony with regard to her ankle. Dr. Narten, the physician who treated claimant in the hospital after the accident, reported that her main problem was subtalar joint osteoarthritis in her right ankle. He considered her prognosis only fair to poor. In a later report, Dr. Narten recommended that claimant do no extended standing, walking, stair climbing, or any heavy housework, although he did state that she could do dishes, occasional bed changes, and light shopping and driving if she engaged in these activities for no

more than an hour. Dr. Glover, after examining the claimant for the Secretary, observed that her right thigh and right calf were each one-half inch smaller than the left thigh and calf. However, Dr. Glover did note that claimant seemed to be improving steadily. Dr. Narten testified in a deposition that claimant's testimony to the effect that she could walk or stand for only twenty to thirty minutes, sit for only thirty minutes to an hour with her feet on the ground, and then needed to elevate her ankle over her heart, was medically justified. Dr. Narten specifically stated that raising the ankle above the waist was not high enough, but that the elevation had to be above the heart. He further observed that claimant had a low tolerance for pain.

There is also some medical evidence in the record to support claimant's testimony with regard to the migraine headaches. Dr. Sankaran reported that claimant was suffering post-concussion/vascular headaches almost every day. He later reported that the drugs claimant was taking for the arthritis in her ankle were causing nausea, dizziness, and migraine headaches. In a deposition, Dr. Sankaran testified that he had first seen claimant on January 26, 1984 mainly to control her headaches. At that time, he noted the arthritis present in her right ankle, as well as the combination of migraine headaches and tension headaches from which claimant suffered. He conducted a brain scan and an EEG, and both were normal. Nevertheless, he testified that there was a medical justification for the frequency of the headaches.

At the hearing held November 2, 1984, a vocational expert testified that claimant's previous work had been light and medium and skilled. He further testified that those skills claimant acquired in her previous work were highly marketable. In answer to a hypothetical question posed by the ALJ, the vocational expert testified that between 4,000 and 5,000 jobs exist in Michigan at the sedentary level requiring the same or less skills than claimant has, with a sit/stand option, and which allow the employee to elevate his or her leg while sitting. Finally, the vocational expert testified that if claimant's testimony with re-gard to her pain, nausea, and need to lie down frequently are accepted, she could not even do sedentary work.

In an opinion dated March 26, 1985, the ALJ found that claimant's right ankle fracture was a severe impairment, but one that did not meet or equal any of the listings. The ALJ rejected claimant's testimony with regard to the headaches because it was not supported by objective medical evidence, and he did not find claimant to be a credible witness. Based upon the vocational expert's testimony with regard to the number of positions available in Michigan calling for sedentary, semi-skilled work with a sit/stand option allowing for elevation of the employee's leg, the ALJ concluded that a significant number of jobs do exist which claimant could perform and that she is therefore not disabled.

After the Appeals Council affirmed the ALJ's decision, claimant filed a complaint in the district court seeking review of the Secretary's decision. In an opinion dated January 30, 1986, the district court rejected a recommendation by the magistrate that the Secretary's decision be affirmed and remanded the case to the Secretary to further develop the record as to claimant's migraine headaches. The district court disagreed with the ALJ's conclusion that claimant's migraine headaches were not a severe impairment because they had not been demonstrated by objective medical evidence, stating: "This conclusion ignores the fact that, unlike other types of headaches, migraines cannot be traced to an objectively determinable source."

On remand, a second hearing was held before an ALJ on June 3, 1986. Claimant again testified to the limitations caused by her ankle injury. She also testified that she still had the migraine headaches "on and off." She stated that they sometimes occur two to three days in a row, and sometimes as much as two to three weeks apart. She testified that they always include a bout of vomiting.

At the second hearing another vocational expert testified. The only real departure in his testimony from that of the vocational

expert in the first hearing was his classification of claimant's prior relevant work as heavy rather than light or medium. The second vocational expert, like the first, testified that if claimant's testimony concerning her headaches, nausea, and especially her migraines is accepted, she could not perform even sedentary work.

Dr. Vanasupa examined claimant for the Secretary on April 22, 1986, but he made no examination with regard to claimant's headaches. Dr. Bhrany examined claimant on June 19, 1986. He reported that claimant has vascular, migraine type headaches. He noted that the headaches could sometimes be relieved by Tofranil, Inderal, or Cafergot suppositories. He further testified that the headaches began about six months after claimant's accident and that the frequency varied from between two and three days in a row to having none for two or three weeks at a time.

The second ALJ issued an opinion on August 29, 1986, denying benefits. Like the first ALJ, he concluded that claimant could not return to her old job, but that she had the residual functional capacity to do sedentary, semi-skilled work with a sit/stand option and the opportunity to elevate her leg as needed. Based on the vocational expert's testimony, he concluded that significant numbers of such jobs exist in Michigan. Like the first ALJ, he did not find claimant, as to her migraine headaches, to be credible. On January 21, 1987, the Appeals Council affirmed the holding of the ALJ. The Council modified the ALJ's finding that claimant needed to be allowed to elevate her leg as needed because the Council found that the ALJ had specifically concluded that this elevation was not needed.

Claimant again filed a complaint in the district court seeking review of the Secretary's determination. The case was assigned to the magistrate, and the magistrate concluded that there was no substantial evidence in the record to support the finding that plaintiff was not disabled. The magistrate based this conclusion on the fact that the Appeals Council's decision was dated January 21, 1987, and therefore fell outside the provisions of the Social Security Disability Reform Act of 1984, which established new standards for evaluating subjective complaints of disabling pain. *See* 42 U.S.C. § 423(d)(5)(A) (Supp. 1988). The standards set forth in the Act were to apply only to "determinations made prior to January 1, 1987." 98 Stat. at 1799. The magistrate therefore applied pre-Reform Act Sixth Circuit case law and determined that because claimant's allegations of pain stemming from the migraine headaches were not contradicted by the medical evidence, the Secretary's credibility finding was not entitled to substantial deference. *See King v. Heckler*, 742 F.2d 968, 975 (6th Cir.1984).

The Secretary objected to the magistrate's recommendations, and upon review the district court rejected them. 666 F.Supp. 121 (E.D.Mich.1987). The district court held that while the provisions of the Reform Act had expired, the court would nevertheless apply them because it found that they were a codification of then existing law. *Id.* at 123. The court therefore applied the standards as explained by this court in *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847 (6th Cir.1986). Because the objective medical evidence did not support claimant's allegations of pain, the court granted summary judgment for the Secretary and affirmed the Secretary's decision denying benefits. 666 F.Supp. at 123. This appeal followed.

## II.

This court's review of the Secretary's findings is limited to an inquiry into whether they are supported by substantial evidence. 42 U.S.C. § 405(g) (1983). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Duncan*, 801 F.2d at 851 (quoting *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983)).

## A.

■ Claimant argues that the district court and the Secretary erred in finding that she had the residual functional capacity to perform certain limited sedentary jobs because the ALJ failed to consider the requirement that she be able to elevate her leg. This argument must be rejected because both vocational experts found that a significant number of jobs exists in the State of Michigan at the sedentary level for people with the same or less skills than claimant with a sit/stand option for employees who cannot sit or stand for prolonged periods and the opportunity to elevate her leg when needed. Thus, this case does not fall within the ambit of this court's ruling in *Wages v. Secretary of Health and Human Services,* 755 F.2d 495 (6th Cir.1985) because there the ALJ relied upon the medical-vocational guidelines, the "grid," to determine that claimant had the residual functional capacity to do sedentary work. *See* 20 C.F.R. Part 404, Subpt. P, App. 2 (1988). The court rejected this conclusion because "[t]he concept of sedentary work contemplates substantial sitting as well as some standing and walking. Alternating between sitting and standing, however, may not be within the definition of sedentary work." *Id.* at 498. Thus, the court in *Wages* rejected the automatic application of the grid to conclude that sedentary work exists for individuals who require a sit/stand option. In this case, however, the ALJ did not rely directly upon the grid, but rather on the testimony of a vocational expert. The vocational expert specifically testified that a significant number of jobs exists for persons with claimant's limitations. Thus, *Wages* does not apply.

## B.

■ Claimant's primary argument focuses upon her subjective complaints of pain due to migraine headaches. Both vocational experts testified that if claimant's allegations of pain and nausea were accepted, she would not be capable of performing any sedentary work whatever. Nevertheless, the Secretary rejected claimant's allegation on the ground that the ALJ found her testimony not to be credible and on the ground that it was not supported by objective medical evidence. Claimant now argues that both the Secretary and the district court applied the wrong standard for evaluating her subjective claims of pain.

Congress established a new statutory standard for evaluating subjective complaints of disabling pain in the Social Security Disability Benefits Reform Act of 1984:

An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which ... would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or other laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C. § 423(d)(5)(A) (Supp.1988). However, as this court noted in *Duncan,* 801 F.2d at 852, "[t]his standard is only temporary ... since the Act also contains a sunset provision. Section 3(a)(3) of the Act provides that § 3(a)(1) [42 U.S.C. § 423(d)(5)(A)] will apply only to 'determinations made prior to January 1, 1987.' 98 Stat. at 1799. At that time, Congress intends to develop a permanent standard based on a study of pain conducted by the Secretary."

To implement the temporary standard, the *Duncan* court announced a two-prong test:

First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective evidence confirms the severity of the alleged pain arising from the condition; or (2) wheth-

er the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain.

801 F.2d at 853. Because the Secretary's final determination in this case was made after January 1, 1987, plaintiff argues that the *Duncan* test does not apply.

Review of the *Duncan* opinion makes clear that the court relied upon *both* the statutory provisions of the Reform Act *and* the administrative provisions of the Secretary's regulations on pain in developing its test. 801 F.2d at 852–53. The Secretary's regulation provides:

If you have a physical or mental impairment, you may have symptoms (like pain, shortness of breath, weakness or nervousness). We consider all your symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms. The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom. We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms.

20 C.F.R. § 404.1529 (1988).

Although the Reform Act no longer applies, § 404.1529 continues to govern claims of disability as a result of pain. It is well within the scope of the Secretary's authority to issue regulations setting forth standards for evaluating claims of disability as the result of pain. "[A]gencies are ... empowered to issue 'interpretive' rules pursuant to the quasi-judicial process of hearings conducted in individual cases. Generally, such quasi-judicial rulemaking is accorded deference by the courts...." *Mason Gen'l Hosp. v. Secretary of Health and Human Services*, 809 F.2d 1220, 1224–25 (6th Cir.1987).

We hold that because the standards announced by this court in *Duncan* were authorized by § 404.1529 as well as by the Reform Act, they continue to apply to cases decided after the sunset of the Reform Act. Applying the *Duncan* test to the case at bar, it is clear that the Secretary's denial of benefits is supported by substantial evidence. Claimant did not introduce objective medical evidence to support the existence or severity of the alleged migraine headaches. The only evidence in the record supporting her claim was the testimony of claimant herself which two ALJs found to be not credible.

The judgment of the district court affirming the Secretary's denial of benefits is AFFIRMED.