9 F.3d 109
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Josephine SHARP, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 92-2559.
 United States Court of Appeals, Sixth Circuit.
 Nov. 5, 1993.
 
 Before: KEITH, NELSON, and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 The plaintiff, Josephine Sharp, appeals the district court's order affirming the Secretary of Health and Human Services' denial of social security disability benefits. The plaintiff challenges the sufficiency of the evidence supporting the Secretary's determination. We conclude that the Secretary's denial of benefits is supported by substantial evidence, and affirm the district court's order.
 
 I.
 
 2
 The plaintiff was employed by General Motors Corporation as an assembler and inspector from 1979 through 1987. On November 2, 1987, the plaintiff injured herself at work, and was laid off permanently a few weeks later when GM closed down her work facility.
 
 
 3
 In mid-January 1988, the plaintiff consulted her family physician, Dr. Southall, for low back pain. The doctor ordered a CT scan, which revealed a mildly bulging, possibly herniated disc. The physician prescribed physical therapy.
 
 
 4
 Over the next two years, Dr. Southall referred the plaintiff to two specialists, a neurological surgeon, Dr. Lopez-Negrete, and a neurologist, Dr. Mitsias. Both specialists agreed that the medical evidence, including the CT scan and a myelographic examination, confirmed no more than a mild disc defect. In addition, Dr. Mitsias reported an incongruity between the plaintiff's complaints of pain and the range of physical ability she displayed during her examination. Dr. Mitsias' examination of the plaintiff for objective evidence of neurologic abnormalities revealed only a mild degeneration of the left ankle jerk.
 
 
 5
 In December 1989, the plaintiff applied for social security disability insurance benefits. She was then 43 years old. Her daily activities included watching television and listening to radio, reading for 30 to 40 minutes at a time, and doing housework. She was able to drive short distances. On Sundays, she attended church services for several hours, and she often visited her mother for up to two hours at a time. She also went fishing occasionally. Based on these reported activities and on the medical opinions of Drs. Southall, Lopez-Negrete, and Mitsias, the Secretary denied her application.
 
 
 6
 Plaintiff filed a request for reconsideration, and was referred to a medical consultant, Dr. Sperl, who found the plaintiff "functionally independent." Dr. Sperl agreed that the plaintiff had some disc irritation, and recommended employment only in jobs in which repetitive bending could be minimized. The doctor also restricted the plaintiff to work that would allow her to alternate between sitting and standing. The plaintiff's request for reconsideration was denied.
 
 
 7
 The plaintiff then requested a hearing before an administrative law judge. She testified that, other than light cooking, she no longer did any housework. Although she testified that she could neither sit nor stand for more than three or four minutes at a time, she admitted that she spent four hours in church each Sunday, and just recently had stopped attending hour-long prayer meetings during the week. She also continued to drive short distances.
 
 
 8
 A vocational expert also testified at the hearing. The expert opined that the plaintiff should qualify for a number of unskilled sedentary jobs with a sit/stand option, including work as a television monitor security guard, information clerk, charge account clerk, and cashier. The expert further testified that approximately 18,500 such jobs existed in the region. The witness cautioned, however, that if the plaintiff's testimony regarding her pain were credited, she might not qualify for gainful employment.
 
 
 9
 At the ALJ's request, the plaintiff consulted an orthopedic surgeon, who concluded that the plaintiff could alternate between sitting and standing at one-half hour intervals throughout an eight-hour work day. The surgeon also stated that the plaintiff was exaggerating her symptoms.
 
 
 10
 Following receipt of the surgeon's report, the ALJ determined that the plaintiff did not qualify for benefits. The ALJ found that the plaintiff suffered a severe impairment of degenerative disc disease, pursuant to 20 C.F.R. Sec. 404.1520(c), however, her impairment did not meet or equal in severity any impairment listed in Appendix 1, 20 C.F.R. Sec. 404.1520(d). Accordingly, the ALJ proceeded to determine the plaintiff's residual functional capacity to perform her past work or work of any kind.
 
 
 11
 The ALJ found that, while the plaintiff could no longer perform her former work, the Secretary had sustained his burden of proving that the plaintiff could perform other jobs which existed in significant numbers in the national economy. Key to the ALJ's determination, in addition to the vocational expert's testimony, were the observations from treating and examining physicians that the plaintiff's medically imposed limitations were significantly less than she had alleged. Importantly, no physician had restricted the plaintiff from the limited standing and walking that sedentary work requires. Moreover, the ALJ found that the plaintiff "was not fully credible." In this regard, he was influenced by discrepancies in the plaintiff's hearing testimony and her admitted ability to sit through four-hour church services.
 
 
 12
 The plaintiff sought federal court review of the benefits denial. A federal magistrate judge recommended summary judgment in the plaintiff's favor, but the district court rejected the recommendation, finding that, "the medical reports to substantiate the pain are not overwhelming."
 
 II.
 
 13
 The plaintiff argues that there was not substantial evidence to support the Secretary's decision, because her own testimony, taken together with Dr. Southall's opinion, established that the plaintiff suffered disabling pain.
 
 
 14
 Judicial review of the Secretary's determination "is limited to an inquiry into whether [the Secretary's findings] are supported by substantial evidence." McCormick v. Secretary of Health & Human Services, 861 F.2d 998, 1001 (6th Cir.1988). "[S]ubstantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Casey v. Secretary of Health & Human Services, 987 F.2d 1230, 1233 (6th Cir.1993). Furthermore, it is the Secretary, rather than the court, who "is charged with the duty to weigh the evidence [and] to resolve material conflicts in the testimony." Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir.1990).
 
 
 15
 When a plaintiff claims disability resulting from pain, her own "statement as to pain or other symptoms shall not alone be conclusive evidence of disability...." 42 U.S.C. Sec. 423(d)(5)(A). Rather, the plaintiff is required to provide "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment ... which could reasonably be expected to produce the pain or other symptoms alleged...." Id.
 
 
 16
 Applying this statutory mandate, the court has developed a two-pronged inquiry for evaluating a plaintiff's claims of subjective pain. Under the standard announced in Duncan v. Secretary of Health & Human Services, 801 F.2d 847 (6th Cir.1986), the court first must determine "whether there is objective medical evidence of an underlying medical condition." Id. at 853. Provided such objective evidence exists, the court then must ask, "whether objective medical evidence confirms the severity of the alleged pain ... or ... whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Id. A plaintiff's failure to satisfy either alternative under the second prong is sufficient evidence to support a conclusion that the plaintiff's pain is not disabling. Id. at 854.
 
 
 17
 This court previously has applied the Duncan test to evidence that closely parallels the evidence here. In McCormick, 861 F.2d 998, a plaintiff testified that she suffered debilitating pain that severely limited her ability to sit or stand for more than 30 minutes at a time. Id. at 999-1000. Medical reports clearly confirmed the existence of her underlying afflictions, the first prong of the Duncan test. Id. at 1000-01. Nevertheless, the ALJ denied benefits, concluding that the plaintiff's testimony regarding her pain was not credible and was not supported by objective medical evidence. Id. at 1002.
 
 
 18
 The court agreed that sufficient evidence supported the ALJ's determination, because the plaintiff had not satisfied Duncan's second prong. Id. at 1003. Other than the plaintiff's own testimony, the only evidence that her pain was severe was her treating physician's observation that the plaintiff had little tolerance for pain. Id. at 1000. The court concluded that this was not the objective evidence of severity required by Duncan, and, that the plaintiff's underlying conditions were not inherently provocative of severe pain. Id. at 1003.
 
 
 19
 This court, in Siterlet v. Secretary of Health & Human Services, 823 F.2d 918 (6th Cir.1987), discussed the ALJ's role in assessing the credibility of a plaintiff's own descriptions of pain. An ALJ determined that the plaintiff was not disabled despite medical reports establishing that the plaintiff suffered from a severe back impairment. Id. at 920. The ALJ based his decision to deny benefits, in large part, on his conclusion that the plaintiff's "pain w[as] not of the severity that had been alleged." Id. This court affirmed:
 
 
 20
 We ... find no valid basis for [the plaintiff's] contention that the ALJ improperly discounted evidence of severe pain. This court has held that credibility determinations with respect to subjective complaints of pain rest with the ALJ.
 
 
 21
 Id.
 
 
 22
 Here, the medical reports of four physicians specializing in neurosurgery or orthopedics confirmed the existence of a disc irritation that in some ways restricted the plaintiff's activity. This evidence undoubtedly satisfied the first prong of Duncan. However, the ALJ found that the evidence was insufficient to satisfy either aspect of the second prong.
 
 
 23
 The only evidence in the record that the plaintiff's pain was disabling was her own testimony; testimony the ALJ found to be inconsistent. In contrast, at least two physicians stated that the plaintiff was exaggerating her pain. Moreover, no doctor suggested that the plaintiff was unable to work at all. Given the absence of corroborative medical evidence, the ALJ was justified in concluding that the plaintiff did not sustain her burden of producing "objective medical evidence confirm[ing] the severity of the alleged pain." Duncan, 801 F.2d at 853.
 
 
 24
 The plaintiff claims, however, that the ALJ improperly assessed her credibility because her treating physician, Dr. Southall, corroborated her testimony. As this court has held, "the opinions of treating physicians should be given greater weight than those held by physicians the Secretary hired and who only examined [the] plaintiff once." Lashley v. Secretary of Health & Human Services, 708 F.2d 1048, 1054 (6th Cir.1983).
 
 
 25
 This principle, however, is not a per se rule. Only when the treating physician's opinion is uncontradicted is it entitled to complete deference. Jones v. Secretary, Health & Human Services, 945 F.2d 1365, 1370 n. 7 (6th Cir.1991). The treating physician's evaluation is less probative where it is not based on objective medical data, Houston v. Secretary of Health & Human Services, 736 F.2d 365, 367 (6th Cir.1984), or where other factors impugn the usual significance of the patient-treating physician relationship, Loy v. Secretary of Health & Human Services, 901 F.2d 1306, 1308-09 (6th Cir.1990).
 
 
 26
 This is not a case where the treating physician's opinion is uncontradicted, or where it is contradicted only by a government consultant. The plaintiff relies entirely on a letter written by Dr. Southall in February 1991, in which he surmises, for the first time, that the plaintiff suffers from a ruptured disc.[1] Not only is this opinion of Dr. Southall contradicted by the two government-retained consultants, it is contradicted by the specialists on whose assessments Dr. Southall relied, and it is contradicted by Dr. Southall's own earlier reports. Thus, the plaintiff's claim, that Dr. Southall's report must be taken as corroborative of her own statements of disabling pain, is unfounded.
 
 
 27
 The plaintiff raises the additional argument that her inability to sit more than four hours in an eight-hour work day significantly compromises the range of sedentary jobs for which she qualifies. She claims that this limitation necessitates a finding of disability.
 
 
 28
 In determining that there were a number of jobs that the plaintiff cold perform, the ALJ referred to the Medical-Vocational Guidelines, known as "the grid," which categorizes work according to level of exertion. Within each category, the grid analyzes the additive impact of a plaintiff's age, education, and prior work experience in rendering that person able or disabled. 20 C.F.R. Part 404, Subpart P, Appendix 2, Sec. 200.00. If a plaintiff's characteristics all conform with those listed in the grid, the grid mandates a corresponding finding of disabled or not disabled. Abbott v. Sullivan, 905 F.2d 918, 927 (6th Cir.1990). On the other hand, if a plaintiff's ability to perform sedentary jobs is limited to certain jobs, or limited by some other factor, "the mandatory directive of the grid rule ... is not appropriate." Id.
 
 
 29
 When a determination of disability must be made by looking outside the grid, the ALJ's primary concern is "whether the full range of sedentary work is significantly compromised." Social Security Ruling 83-12, slip op. at 189. The ALJ usually will require the assistance of a vocational consultant in making the determination. Id.
 
 
 30
 The plaintiff argues that her need for a sit/stand option inherently compromises the range of sedentary jobs for which she qualifies, and thus requires a finding of disability. In support of her argument, she relies on this court's opinion in Wages v. Secretary of Health & Human Services, 755 F.2d 495 (6th Cir.1985). In Wages, an ALJ relied on the grid to determine that the plaintiff was not disabled, even though she needed to alternate between sitting and standing. Id. at 497. The court held that the sit/stand option made it error to adhere to the grid. Id. at 499.
 
 
 31
 However, we have previously determined that Wages prohibited only the ALJ's exclusive reliance on the grid when a sit/stand option is required. McCormick, 861 F.2d at 1002. If a vocational consultant can identify a significant number of sedentary jobs that accommodate a sit/stand option, then the ALJ is justified in concluding the plaintiff is not disabled. Bradley v. Secretary of Health & Human Services, 862 F.2d 1224, 1227 (6th Cir.1988).
 
 
 32
 Here, the ALJ properly considered the testimony of a vocational consultant, who identified over 18,000 appropriate jobs in the immediate region that could accommodate a sit/stand limitation. Based on the consultant's testimony, the ALJ properly concluded that the range of sedentary jobs had not been significantly compromised by the sit/stand option.
 
 
 33
 On the whole record before him, the ALJ was warranted in concluding that the plaintiff was not entitled to disability benefits.
 
 III.
 
 34
 The district court's order granting summary judgment in favor of the Secretary is AFFIRMED.
 
 
 
 [1]
 Because nothing in Dr. Southall's reports provides that the plaintiff is disabled by pain, it appears the plaintiff's argument is that a ruptured disc is disabling per se